UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | CASE NO. 3:19-CR-126-PLR |
| CHAD RUTHERFORD, | ) |  |
| Defendant. | ) |  |

## MEMORANDUM AND ORDER

The Honorable Debra C. Poplin, United States Magistrate Judge, filed a 26-page Report and Recommendation [R. 26], in which she recommended that that Defendant's Motion to Suppress [R. 17] be denied.

This matter is before the Court for consideration of Defendant's objections [R. 30] to the Report and Recommendation [R. 26]. As required by 28 U.S.C. § 36(b)(1) and Fed. R. Civ. P., 72(b), the Court has now undertaken a *de novo* review of those portions of the Report and Recommendation to which Defendant objects. For the reasons that follow, the Court finds Defendant's objections without merit and the objections will be overruled.

The parties do not object to Judge Poplin's factual determinations, and the court concludes they are accurate. Judge Poplin's factual findings are as follows: The Knox County Sheriff's Office ("KCSO") narcotics unit began interacting with a confidential informant ("CI") on April 8, 2019, regarding a potential investigation into "Little Lucky," who the CI stated had sold him several ounces of methamphetamine weekly. The CI detailed that Little Lucky drove a gray Pontiac Grand Am. The KCSO narcotics unit and KCSO Detective Nikki Plaza then arranged a meeting between the CI and Little Lucky at the Shell gas station on Clinton Highway on April 11,

2019, to begin further surveillance. On April 11, 2019, the CI met with Little Lucky, who arrived in a gray Chevy Impala, at the pre-arranged time and location. Law enforcement attempted to surveil the Chevy Impala after the meeting, but they soon lost the vehicle. Law enforcement ran the license plate number of the Chevy Impala, which led to Defendant's driver's license and photograph, and the CI confirmed that the individual he met with was both Little Lucky and the individual in the driver's license picture. Further investigation by law enforcement revealed that Defendant was in a relationship with Tabetha Davila.

Detective Plaza and the KCSO narcotics unit then worked with the CI to arrange a purchase of methamphetamine from Defendant on April 15, 2019, at the Ingles parking lot located at 7466 Oak Ridge Highway. Detective Plaza arrived at the Ingles parking lot, while KCSO Detective Tyler Ballard was parked further down Oak Ridge Highway in a library parking lot, and both detectives were in unmarked vehicles. The CI was not present at the Ingles parking lot, but Detective Plaza was in contact with the CI throughout the day. Detective Plaza parked in the back-left end of the parking lot towards a residential area. At approximately 4:31 p.m., Detective Plaza witnessed the previously identified gray Chevy Impala with two occupants inside of the vehicle pull into the Ingles parking lot. The Chevy Impala parked in the row directly behind Detective Plaza's vehicle. Detective Plaza waited approximately ten minutes before radioing Detective Ballard to enter the parking lot.

Detective Plaza then backed out of her parking spot, pulled forward to Defendant's vehicle, and activated her blue lights while Detective Ballard parked his vehicle behind the Chevy Impala. Detective Ballard approached the driver's side of the vehicle, while Detective Plaza approached the passenger's side. Detective Ballard asked Defendant to exit the vehicle and asked if there was anything inside of the vehicle that he needed to be aware of, to which Defendant responded that

2

there was a gun inside of the vehicle, and then turned his body back towards the vehicle. At this time, Detective Ballard pulled Defendant away from the vehicle and placed him in handcuffs.

After hearing Detective Ballard mention a firearm, Detective Plaza removed Ms. Davila, the passenger of the vehicle, from the Chevy Impala and placed her in handcuffs. Other members of law enforcement, including a K-9 unit, also arrived at the scene. The K-9 unit alerted on the vehicle. A resulting search of the Chevy Impala revealed a Ruger handgun between the driver's seat and center console, approximately 93 grams of a substance believed to be methamphetamine, approximately 10 grams of a substance believed to be heroin, two digital scales with residue, multiple small baggies, and approximately $1,857.00 in cash.

Defendant seeks to suppress all evidence seized from the alleged illegal search and seizure of his vehicle in the Ingles parking lot on April 15, 2019. Defendant maintains that both the initial detention of his vehicle, as well as the resulting warrantless search, violated his rights under the Fourth Amendment. The Court will address Defendant's arguments in turn.

Defendant filed three objections to the R&R as follows:

1. Defendant objects to Judge Poplin's finding that sufficient reasonable suspicion existed for the seizure of the Defendant and his vehicle. Based on the evidence presented as the suppression hearing and the arguments presented by the parties, Defendant specifically objects to the Report's conclusions related to establishing reasonable suspicion due to the lack of prior performance and credibility of the informant. Defendant avers that the officers did not have the requisite reasonable suspicion to justify the detention of his vehicle parked in a parking lot of a grocery store during normal hours of operation. Therefore, when Detective Plaza and Detective Ballard used their cars to block Defendant from driving away, he was seized illegally and was unlawfully detained under Fourth Amendment purposes. Defendant also argues that the

3

Government illegally detained him based upon the statements from a CI who had not previously worked with law enforcement and who Detective Plaza admitted was "flaky."

The Government agrees that Defendant was detained and seized once he was blocked into the parking lot, however, the Government argues that the detention of Defendant's vehicle was lawful because law enforcement had reasonable suspicion that he was engaged in illegal activity. The Government contends it had such reasonable suspicion based on information gathered from the CI, Detective Plaza's subsequent corroboration of that information, and Defendant arriving at the arranged location for a scheduled purchase of methamphetamine.

All seizures receive Fourth Amendment protection. *United States v. Beauchamp*, 659 F.3d 560, 566 (6th Cir. 2011) (citing *United States v. Smith*, 594 F.3d 535, 535 (6th Cir. 2010)). If the officers have a reasonable suspicion of criminal activity stemming from "specific and articulable" facts, which the officers know at the time of the stop, law enforcement may temporarily seize a person or vehicle. *Terry v. Ohio*, 392 U.S. 1, 21–22, 27 (1968); *United States v. Bentley*, 29 F.3d 1073, 1075 (6th Cir. 1994). More specifically, an officer has reasonable suspicion when the officer can articulate specific, particularized facts that criminal activity may be afoot, however, the officer must have more than a 'hunch' that such activity is occurring. *United States v. Bridges*, 626 F. App'x 620, 623 (6th Cir. 2015). Moreover, whether reasonable suspicion exists is evaluated based on the totality of circumstance at the time of the investigatory stop. *Bridges*, 626 F. App'x at 623; *see also United States v. Davis*, 514 F.3d 596, 608 (6th Cir. 2008).

An officer who decides to conduct a Terry stop must be acting on more than an "unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27. Instead, the officer must rely on "specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id*. Officers may make inferences from and deductions about the totality of

4

information available to them based on their own experience. *United States v. Ellis*, 497 F.3d 606, 613 (6th Cir. 2007). Importantly, an officer's reasonable suspicion does not have to arise from that officer's direct observation but can be based on informant tips. *Smoak v. Hall*, 460 F.3d 768, 779 (6th Cir. 2006).

Here, law enforcement had reasonable suspicion before detaining the vehicle that Defendant was engaged in criminal activity. The CI stated to Detective Plaza that Defendant sold methamphetamine. Detective Plaza worked with a CI to schedule a purchase of methamphetamine from Defendant. And a "tip from an identifiable informant who gives reasonably detailed information can provide reasonable suspicion, especially if an investigating officer's own observations contribute to his suspicions." *United States v. Gaston*, 776 F.3d 405, 408 (6th Cir. 2015) (citing *Smoak*, 460 F.3d at 779–80). Additionally, "[a] tip from an informant 'whose reliability is not established' may support a finding of reasonable suspicion if 'there is some independent corroboration by the police of the informant's information.'" *Bazzi v. City of Dearborn*, 658 F.3d 598, 605 (6th Cir. 2011) (quoting *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000)).

The CI provided the color and believed model of Defendant's vehicle, and law enforcement subsequently scheduled a meeting on April 11, 2019, between the CI and Defendant. Although law enforcement was unable to identify Defendant directly, and the CI misidentified Defendant's car as a Pontiac Grand Am instead of the Chevy Impala Defendant actually drove, officers pulled the vehicle registration of Defendant's vehicle and corroborated his information. The CI subsequently confirmed that he had regularly purchased methamphetamine from Defendant, and after reviewing his driver's license picture, the CI confirmed that Defendant was Little Lucky.

5

Further, the CI told Detective Plaza about Defendant's relationship with Ms. Davila, which Detective Plaza corroborated by reviewing Ms. Davila's public Facebook page.

Additionally, the CI arranged the purchase of methamphetamine from Defendant and stayed in contact with Detective Plaza on the day of the scheduled purchase to update her on any changes. On the day the CI arranged the drug purchase from Defendant, Detective Plaza observed Defendant's vehicle, which she identified by the make, model, and license plate number, enter the Ingles parking lot near the arranged time. Law enforcement had also previously identified Defendant from his driver's license picture, which the CI stated was Little Lucky after his April 11, 2019 meeting. Detective Plaza testified that upon seeing Defendant's vehicle enter the parking lot, the two occupants in the vehicle looked very similar to Defendant and Ms. Davila. Finally, upon Defendant's arrival in the parking lot, Detective Plaza waited 10 minutes to see if Defendant entered the Ingles, which he did not do.

This Court finds that law enforcement had a reasonable suspicion before detaining Defendant's vehicle that he was engaged in criminal activity and may have been in the possession of illegal drugs. The CI had arranged the purchase of methamphetamine from Defendant, the police corroborated the information obtained from the CI, and Defendant arrived at the pre-arranged location and time. Accordingly, it was reasonable to conduct a brief, investigatory stop of Defendant's vehicle. Therefore, Defendant's objection is **OVERRULED**.

2. Defendant objects to Judge Poplin's finding that probable cause existed to search the Defendant's vehicle after an unlawful seizure. Defendant avers that the officers articulated no probable cause that evidence of a crime or contraband would be found in the vehicle. Defendant argues that the officers based the detention and resulting search of Defendant's vehicle upon information obtained from a first-time informant and that they should have continued their

6

investigation and obtained a search warrant.

The Government argues that the search was valid as a search incident to a lawful arrest. According to the Government, Detective Ballard's observation, when removing Defendant from his vehicle, of methamphetamine in the front driver's side door, scales, a bag of methamphetamine in the center console, and a firearm constituted probable cause to arrest Defendant. Therefore, the officers could search the entire vehicle as a search incident to a lawful arrest. The Government also avers that Detective Ballard could seize the methamphetamine within the driver's side door as it was in plain view, which provides the officers an additional basis to search Defendant's vehicle.

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. CONST. amend. IV. Searches largely must be conducted only pursuant to the issuance of a warrant, but a warrantless search can occur so long as certain standards are met. However, assessing the reasonableness of a warrantless search must begin with the premise that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (internal footnote omitted). Below, the Court will review the various exceptions to the warrant requirement for searches under the Fourth Amendment.

The first exception concerns searching a vehicle. Regarding this exception, the Supreme Court has stated that "[e]ven in cases where an automobile [is] not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justifie[s] application of the vehicular exception." *California v. Carney*, 471 U.S. 386, 391 (1985). Pursuant to this exception, law enforcement may conduct a search of a vehicle without a warrant if officers have

7

Case 3:19-cr-00126-PLR-DCP   Document 36   Filed 07/21/20   Page 7 of 14   PageID #: 263

"probable cause to believe that the vehicle contains evidence of a crime." *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998) (internal citations omitted). Officers have probable cause when there is a "fair probability that contraband or evidence of a crime" will be found in the vehicle. *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998) (quoting *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir.), cert. denied, 512 U.S. 1243 (1994)). Further, a court makes this probable cause determination based on "totality-of-the-circumstances" and is a "commonsense, practical question." *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (quoting *Smith v. Thornburg*, 136 F.3d 1070, 1074-75 (6th Cir. 1998)).

Here, first, law enforcement had probable cause to believe that contraband or evidence of a crime would be found in Defendant's vehicle. Law enforcement had utilized a CI to meet with the Defendant, who identified Defendant as Little Lucky. Officers subsequently were able to corroborate this information through reviewing Defendant's driver's license information with the CI. Officers then arranged a purchase of methamphetamine from the Defendant through the CI. On the day of the arranged meeting, Detective Plaza saw Defendant's vehicle enter the Ingles parking lot at the time arranged by the CI. After being approached by officers, Defendant informed Detective Ballard that he had a gun inside of the vehicle. When Defendant opened the door, Detective Ballard testified that he observed and identified a bag, that he suspected contained methamphetamine, in the bottom compartment on the driver's side door of the vehicle.

Given these circumstances, the Court finds that law enforcement had probable cause to suspect that Defendant's vehicle contained contraband and evidence of drug trafficking. Thus, the warrantless search of Defendant's vehicle was valid pursuant to the automobile exception. *See United States v. Arnold*, 442 F. App'x 207, 210 (6th Cir. 2011); *United States v. Turner*, No. CR-18-53-DLB-CJS-1, 2019 WL 2814648, at *5 (E.D. Ky. July 2, 2019).

8

The second exception to the warrant requirement is a search incident to a lawful arrest. When police actions extend beyond investigating the suspicious circumstances that led to the original stop, the detention transforms into an arrest that must be supported by probable cause. *United States v. Obasa*, 15 F.3d 603, 607 (6th Cir.1994). "At the same time, 'the use of guns, handcuffs, and detention . . . do[es] not automatically transform a Terry stop into an arrest'; rather, the officers' 'displays of force must be warranted by the circumstances.'" *United States v. McElrath*, 786 F. App'x 575, 581 (6th Cir. 2019) (quoting *Brown v. Lewis*, 779 F.3d 401, 415 (6th Cir. 2015)). "Such 'intrusive measures are warranted' if, for example, 'specific facts lead to an inference' that the suspect poses a risk 'of violence to the officers.'" *Id.* "These 'specific facts' can include information supporting 'a reasonable belief that the suspect is armed and dangerous.'" *McElrath*, 786 F. App'x at 581–82 (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 835 (6th Cir. 2005)).

Here, this Court agrees with Judge Poplin that Detective Ballard was justified in restraining Defendant in handcuffs because Defendant stated that he had a gun inside of the vehicle and then turned to reach towards the gun. According to Detective Ballard's testimony, when he pulled Defendant away from the vehicle, Detective Ballard noticed the bag of methamphetamine in the driver's side door, as well as a firearm, scales, and an additional bag of methamphetamine in the center console of Defendant's vehicle.

Given these circumstances, the Court finds that law enforcement had probable cause to arrest Defendant. Therefore, law enforcement could also validly search Defendant's vehicle as a search incident to a lawful arrest. "Under Sixth Circuit law, it is well-established that a confidential informant's tips to law enforcement—when shown to be substantially corroborated—are sufficient to establish probable cause." *United States v. McCloud*, No. CR 18-23-DLB-CJS, 2018 WL

9

5046063, at *3 (E.D. Ky. Oct. 17, 2018) (citing *United States v. Strickland*, 144 F.3d 412, 417 (6th Cir. 1998)).  As already enumerated above, law enforcement had confirmed the identity of the Defendant as Little Lucky through the CI as well as confirming his vehicle after the CI initially misidentified the make and model.  The CI stated he had previously purchased methamphetamine from Defendant.  Detective Plaza then had the CI arrange a drug transaction with the Defendant in the Ingles parking lot on a specific day at a certain time.  The CI was in contact with Detective Plaza throughout the day of the planned transaction to relay information surrounding the sale, such as Defendant's arrival time.  Detective Plaza then observed Defendant arrive at the scheduled time and location in his vehicle.  Additionally, Detective Plaza testified that the individuals in the vehicle looked very similar to both Defendant and Ms. Davila.  *See United States v. Gill*, 685 F.3d 606, 610 (6th Cir. 2012) (finding that probable cause to arrest defendant existed at the time of arrest because the police corroborated key elements of the confidential informant's statements such as the make and model of the car the defendant was driving and the location of the arranged drug sale); *McCloud*, 2018 WL 5046063, at *3 ("Specifically, the Sixth Circuit has repeatedly held that probable cause exists when an informant describes the details of a drug transaction that is to take place in the future, and those details are then independently observed by police officers.") (internal citations omitted).

      Here, this court acknowledges that this was the first time this CI had been used as an informant, however, the officers established his reliability by corroborating the information he provided.  Additionally, although the CI initially misidentified the make and model of Defendant's vehicle, he subsequently identified Defendant after meeting with him through Defendant's driver's license picture.  Further, as Judge Poplin stated, the fact that law enforcement did not witness Defendant engage in "any actual illegality" does not alter the probable cause analysis.  *See*

10

*Strickland*, 144 F.3d at 417 (finding that a sufficiently corroborated tip from an informant supported probable cause even though the police did not witness any criminal activity). Moreover, the "Fourth Amendment does not require that a police officer know a crime has occurred at the time the officer arrests or searches a suspect." *Id. at 415*. It also does not matter that the setup drug transaction between the CI and Defendant did not occur. *United States v. Gaither*, No. 17-15-DLBCJS, 2018 WL 1033457, at *6 (E.D. Ky. Feb. 22, 2018); *Gill*, 685 F.3d at 610. Instead, the law "merely requires the existence of 'facts that . . . could lead a reasonable person to believe that an illegal act has occurred or is about to occur.'" *Gill*, 685 F.3d at 610 (quoting *Strickland*, 144 F.3d at 416). Accordingly, this Court finds that the officers had probable cause to arrest Defendant.

Further, "a formal custodial arrest need not precede the search as long as the formal arrest follows 'quickly on the heels of the challenged search' and the 'fruits of that search are not necessary to sustain probable cause to arrest.'" *United States v. McCraney*, 674 F.3d 614, 619 (6th Cir. 2012) (quoting *United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004)). Therefore, as law enforcement had probable cause to arrest Defendant, the Court must also analyze whether law enforcement validly searched Defendant's vehicle as a search incident to a lawful arrest. The Court has already detailed that the search of Defendant's vehicle was supported by probable cause, but the search was also permissible as a search incident to a lawful arrest.

In *Arizona v. Gant*, the Supreme Court found that law enforcement may search a vehicle incident to a lawful arrest "when it is reasonable to believe evidence relevant to the crime of arrest may be found in the vehicle." 556 U.S. 332, 343 (2009). In *Gant*, the Supreme Court found that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or if it is reasonable to

11

believe the vehicle contains evidence of the offense of arrest." *Id.* at 351.

Here, law enforcement reasonably believed that Defendant's vehicle contained evidence of drug trafficking. This belief stemmed from Detective Plaza arranging the purchase of methamphetamine from Defendant through a CI, and Defendant arriving at the arranged location and time. Therefore, the search of Defendant's vehicle was proper as a search incident to a lawful arrest. *See United States v. Latham*, 763 F. App'x 428, 430–31 (6th Cir. 2019).

Although the Court has already found that the search of Defendant's vehicle was permissible pursuant to both the automobile exception and as a search incident to a lawful arrest, the Court will now address a third exception—the plain view exception. There are four requirements for evidence to fall within the plain view exception. The evidence at issue must be "(1) in plain view; (2) of a character that is immediately incriminating; (3) viewed by an officer lawfully located in a place from where the object can be seen; and (4) seized by an officer who has a lawful right of access to the object itself." *United States v. Roark*, 36 F.3d 14, 18 (6th Cir. 1994) (citing *Horton v. California*, 496 U.S. 128, 136–37 (1990)). "[A] motorist has 'no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers.'" *United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011) (quoting *United States v. Campbell*, 549 F.3d 364, 373 (6th Cir. 2008)). For evidence to fall within the plain view doctrine, the criminality of the evidence must be 'immediately apparent' to the officers. *United States v. McLevain*, 310 F.3d 434, 440 (6th Cir. 2002). And determining whether an item is immediately incriminating does not require an unduly high degree of certainty, but instead a plain view seizure is "presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." *United States v. Calloway*, 116 F.3d 1129, 1133 (6th Cir.) (quoting *Texas v. Brown*, 460 U.S. 730,

12

741–42 (1983). In assessing whether the incriminating character of an item was immediately apparent, the Court may look to "whether the intrinsic nature or appearance of the seized object gives probable cause to associate it with criminal activity[.]" *Id.* (citing *United States v. Beal*, 810 F.2d 574, 576–77 (6th Cir. 1987)).

Here, the Court has already found that Detective Ballard lawfully detained Defendant when Defendant turned towards his vehicle after responding that he had a firearm inside of the vehicle. Detective Ballard testified that he originally observed a bag of methamphetamine in the driver's side door, as well as scales, the firearm, and another bag of methamphetamine in the center console. Detective Plaza also testified that when she had Ms. Davila exit the vehicle, she observed what she believed to be methamphetamine in the front passenger seat and center console of the vehicle.

Therefore, the Court finds that both bags of methamphetamine, the firearm and the scales, were within plain view and immediately incriminating due to the developed probable cause that Defendant was engaging in narcotics trafficking. The officers lawfully seized Defendant, and the methamphetamine and firearms were easily seen from their vantage point outside of the vehicle. Thus, the Court finds that the plain view doctrine applies and provides a basis for the search of Defendant's vehicle without a warrant.

In summary, the Court finds that three exceptions apply here and provide a permissible basis for the warrantless search of Defendant's vehicle.[1] Therefore, Defendant's objection is **OVERRULED**.

3. Defendant objects to Judge Poplin's recommendation that all evidence seized by law enforcement should not be suppressed as fruit of the poisonous tree. Given the reasons discussed above, this Court finds that the evidence seized by law enforcement was proper and

---

[1] As Judge Poplin stated, because this Court has found three permissible bases for the warrantless search of Defendant's vehicle, the Court will not address the resulting alert by the K-9 unit on the Defendant's vehicle.

13

should not be suppressed. Thus, this objection is also **OVERRULED.**

After a careful review of the record, the court is in complete agreement with Judge Poplin's Report and Recommendation [R. 26], in which she recommended that that Defendant's Motion to Suppress [R. 17] be denied. Accordingly, the court **ACCEPTS IN WHOLE** the Report and Recommendation under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). It is **ORDERED**, for the reasons stated in the Report and Recommendation, which the court adopts and incorporates into its ruling, that Defendant's Motion to Suppress [R. 17] is **DENIED.**

    **IT IS SO ORDERED.**

_____
**CHIEF UNITED STATES DISTRICT JUDGE**